IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

IN RE:
NAZIR KHAN,
Petitioner,

v.

HON. HOWARD C. NIELSON, JR., United States District Judge for the
District of Utah,
HON. STEVE C. JONES, United States District Judge for the Northern
District of Georgia,
Respondents.

Related cases:
Khan v. Merit Medical, No. 2:21-CV-00337-HCN-CMR (D. Utah)
Khan v. Artivion, Inc., No. 1:21-CV-02291-SCJ (N.D. Ga.)

RECEIVED

JUL 21 2025

United States Court of Appeals
For the Federal Circuit

PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES
COURT OF APPEALS FOR THE FEDERAL CIRCUIT
TO COMPEL ARTICLE III ADJUDICATION AND RULINGS ON
JURISDICTIONAL CHALLENGES

TO THE HONORABLE JUDGES OF THE FEDERAL CIRCUIT COURT

OF APPEALS:

- **INTRODUCTION AND JURISDICTION**

Petitioners Nazir Khan and Iftikhar Khan respectfully petition this Honorable Court for a writ of mandamus to compel the above-named Article III judges to carry out their constitutional duties. Despite raising structural constitutional violations, statutory jurisdictional defects, and unrebutted evidence of fraud on the court, Petitioner's claims have been evaded, dismissed on improper grounds, and never adjudicated on the merits by a life-tenured Article III judge. This is not merely procedural error—it is a systemic failure that violates Article III, the Patent Clause, and the Fifth Amendment's guarantee of due process.

## I. INTRODUCTION AND JURISDICTION

This Court possesses jurisdiction to issue writs of mandamus under 28 U.S.C. § 1651(a) to protect and enforce its appellate authority. A writ is appropriate when:

- The petitioner has a clear and indisputable right to relief;

- The respondent has a plain and nondiscretionary duty to act; and

- There is no other adequate remedy available.

See *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004). All three prongs are overwhelmingly satisfied in this case. The unlawful issuance and enforcement of dispositive orders by a magistrate judge without consent, the failure of Article III judges to resolve jurisdictional objections, and the continuous denial of adjudication all demonstrate the necessity for immediate corrective action.

## II. FACTUAL AND PROCEDURAL HISTORY

Dr. Nazir Khan, a cardiovascular surgeon and the named inventor of U.S. Patent No. 8,747,344, has spent years attempting to vindicate his exclusive rights under the Patent Clause. He brought lawsuits in the District of Utah and the Northern District of Georgia against Merit Medical and Artivion, Inc., respectively, for infringing the patented Khan Hybrid Arteriovenous Shunt.

In Utah, Magistrate Judge Cecelia Romero issued dispositive orders—including the imposition of sanctions under 35 U.S.C.§ 285—without party consent as required by 28 U.S.C. § 636(c). She also failed to issue a Report and Recommendation as mandated by § 636(b)(1)(B). These actions are not procedural technicalities; they are structural constitutional violations that render the rulings void ab initio.

Despite repeated objections, Judge Howard C. Nielson, Jr. refused to rule on the constitutional and jurisdictional motions challenging the authority of Judge Romero.

In the attached Memorandum for de novo review it is clearly and irrefutably explained, **why estoppel in the Utah case does not even apply at all** as it is precluded by the U.S Patent and Trial Appeals Board who granted US patent 8,747,344 to Nazir Khan. **This cannot be relitigated in the Federal District Court of Utah and mag. judge Romero missed this glaring fact of law.** This and other major reasons in the "Memorandum for de novo review" contained in the Appendix is why this case should have been easily decided in favor of the plaintiffs, Nazir Khan and Iftikhar Khan, **by any impartial jurist in a matter of days, but has been obstructed illegally in**

the Utah Court for 4 YEARS.

There is a glaring reason an Article III judge in Utah has not adjudicated the infringement claims and that is because mag. judge Romero's rulings are filled with so many legal errors, outright falsehoods, and constitutional errors no Article III judge in their right mind would ever do such a thing. There is collusion between the Utah Court and defense counsel , Brent Lorimer, so Merit Medical Inc, a $6 billion company can keep making $10,000,000 a year on a medical device they have no patent for and should be paying the rightful owner of the patent 344, Nazir Khan for such intellectual property rights

The Memorandum and relevant figures demonstrating clear infringement by Merit Medical's HeRO graft on patent 344 are included the Appx and Exhibits A-D.

## III. LEGAL GROUNDS FOR MANDAMUS

## A. ARTICLE III VIOLATIONS ARE STRUCTURAL AND UNWAIVABLE

The U.S. Constitution provides that "[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. art. III, § 1. It further requires that judges "shall hold their Offices during good Behaviour," meaning life tenure.

The Supreme Court has repeatedly held that only Article III judges may enter final judgment on claims involving private rights, such as patents, unless the parties provide clear and knowing consent to a non-Article III officer. See *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015).

28 U.S.C. § 636(c) requires **explicit consent** of all parties for a magistrate judge to enter dispositive orders. No such consent was given in this case. Therefore, all orders issued by Magistrate Judge Romero beyond the scope of § 636(b)(1)(A) are constitutionally void.

When Judge Jones relied on these void orders to dismiss Petitioner's separate case in Georgia, he compounded the violation by allowing an unconstitutional ruling to preclude valid claims. Structural constitutional errors are never harmless. See *Freytag v. Commissioner*, 501 U.S. 868,

879–80 (1991). These errors demand reversal and mandate enforcement of Article III's requirements.

## B. FAILURE TO RULE ON JURISDICTION IS A NONDISCRETIONARY DERELICTION OF DUTY

Jurisdiction is not an abstract formality—it is the prerequisite for lawful judicial action. See *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States.").

Petitioner raised jurisdictional objections based on the lack of party consent to magistrate jurisdiction, the absence of a report and recommendation under § 636(b)(1)(B), and the structural defect of allowing a non-Article III officer to enter final judgment.

Judges Nielson and Jones had a **non-discretionary duty** to rule on those objections before taking any further action. See *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999). Their failure to rule is a continuing violation

that deprives Petitioner of a lawful forum.

## C. NON-ADJUDICATION VIOLATES DUE PROCESS

The Fifth Amendment guarantees that "[n]o person shall... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Due process includes the right to a fair hearing before a neutral and lawfully empowered judge. See *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Petitioner has received **no adjudication** of the core motions in his case— including challenges under Rule 60(b) and Rule 60(d)(3). These motions assert fraud on the court, jurisdictional voidness, and constitutional violations. The refusal of any Article III judge to resolve these issues is itself a denial of due process.

Additionally, the reliance on falsehoods, fabrication of consent, and structurally void rulings compounds the constitutional injury. Without mandamus, this Court will have effectively permitted a lifetime inventor's property rights to be extinguished through unlawful means.

## D. NO OTHER ADEQUATE REMEDY EXISTS

Petitioner has exhausted every conventional avenue. Motions filed under the Federal Rules of Civil Procedure remain unresolved or ignored. Orders have been entered based on rulings that are facially void. The normal appellate process cannot correct structural errors that originate from jurisdictional nullity and judicial abdication.

See *Ex parte United States*, 287 U.S. 241, 250–51 (1932) ("The writ of mandamus is the appropriate remedy for a refusal to exercise jurisdiction.")

Only this Court has the power to enforce constitutional structure, compel adjudication, and vindicate property rights under the Patent Clause.

## IV. PRAYER FOR RELIEF

Petitioner respectfully requests that this Court:

- **Issue a writ of mandamus compelling Judges Nielson and Jones to rule immediately on all pending constitutional and jurisdictional motions,** including challenges to the dispositive rulings of Magistrate Judge Cecelia Romero;

- **Declare that all dispositive rulings issued by Magistrate Judge Romero are void ab initio for lack of party consent under 28 U.S.C.§ 636(c)** and because no proper Report and Recommendation was issued under§ 636(b)(1)(B);

- **Order that all of Petitioner Nazir Khan's and co-inventor Iftikhar Khan's claims—including claims under U.S. Patent No. 8,747,344—receive full, fair, and independent Article III adjudication,** including resolution of all Rule 60(b) and 60(d)(3) motions;

- **Acknowledge and confirm that all facts and legal arguments presented by Petitioners are correct in law and supported by the uncontested record,** including violations of the Constitution, statutory law, and Federal Rules of Civil Procedure;

- **Grant any additional relief this Court deems necessary and just to restore the integrity of the judicial process, protect the rights guaranteed under the Patent Clause, and prevent ongoing irreparable harm.**

Respectfully submitted,

**/s/ Nazir Khan**

**/s/ Iftikhar Khan**

To

The Clerk of Utah Court. This memorandum in-law is addressed To Honorable Judge

Howard Nielson Jr for Denovo review of errors of Magistrate Judge Cecelia M.
Romero.in tis litigation, please enter memorandum in Court Docket . This should not be Lodged
by Judge Romero.

X
NAZIR KHAN Prose,

Dated 5/14/2025

c.c to chief
Justice
sent on 5/14/2025

**RECEIVED CLERK**

**MAY 19 2025**

**U.S. DISTRICT COURT**

**APPX1**

# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF UTAH, CENTRAL DIVISION

## NAZIR KHAN,

Plaintiff,

v.

## MERIT MEDICAL SYSTEMS, INC.,

Defendant.

Case No. 2:21-cv-00337-HCN-CMR

District Judge: Hon. Howard C. Nielson Jr.

Magistrate Judge: Hon. Cecelia M. Romero

1

## PLAINTIFF'S FINAL MEMORANDUM OF LAW IN SUPPORT OF DE NOVO REVIEW AND VACATUR OF ORDERS 30, 125, 209, 212, AND 213 FOR CLEAR ERRORS IN LAW AND FACT

Respectfully Hon. Judge Nielson, Hon. Chief Judge Shelby and Hon. Chief Judge Holmes, the time has come for this case to finally be adjudicated fairly with regards to the plain legal facts that exist. The miscarriage of justice in this case by Magistrate Judge Romero is over. Whatever has compromised the fair application of justice and led to collusion between Mr. Lorimer and magistrate judge Romero in this case is to be discovered, but is now officially OVER. This misapplication of justice that has lingered on for too many years under magistrate Judge Romero's control has been a stain to our legal system and this Federal Court of Utah, and its end is welcome. This is why we now ask Judge Nielson and Chief Judge Holmes to finally **adjudicate** these matters once and for all.

**The glaring fact is that there has been NO legal refutation made or intellectual argument made by magistrate judge Romero to our patent infringement claims and the merits of our patent infringement suit against Merit Medical Inc, to substantiate ANY of her rulings**. If there exists a legal refutation to our claims than magistrate Judge Romero could have made them, and we respectfully welcome any substantive legal refutation from any judge or any patent attorney in the United States which can refute the plain legal facts of our patent infringement suit below, but none exist as our claims and arguments are irrefutable.

## IRREFUTABLE SUMMARY OF FACTS REGARDING PATENT NO. 8,747,344 AND INFRINGEMENT BY THE HERO GRAFT

2

Dr. Nazir Khan is the co-inventor and patent holder of U.S. Patent No. US 8,282,591(parent patent '591) and US No. 8,747,344 (hereinafter, "the '344 Patent"), which discloses a novel hemodialysis access device for patients with end-stage renal disease who need dialysis. The invention, referred to as the Khan Hybrid Arteriovenous Shunt, dramatically reduces the failure rate of hemodialysis grafts by bypassing the fragile venous system and directing return blood flow from dialysis directly into the right atrium of the heart via a long venous outflow catheter.

By contrast, prior art—such as the Squitieri patent (U.S. Pat. No. 6,102,884), to which Defendant **Merit Medical Systems is an assignee—returned blood into the veins only, not the right atrium of the heart as in patent 344,** leading to a documented **80% failure rate** of previous hemodialysis devices, like Suitieri's due to vein damage from high arterial pressure leading to stenosis and thrombosis. The innovation embodied in the '344 Patent was thus both novel and non-obvious, and its most critical claim (Claim 13) includes:

a graft connected to an artery,

a connector cuff disposed about a venous outflow catheter, and

a venous outflow catheter that terminates in the right atrium.

The dispositive functionality and clinical efficacy of the hemodialysis catheter in patent 344 stem from the catheter's **destination in the right atrium of the heart,** which eliminates shear stress and injury to the veins that caused the 80% failure of previous arteriovenous shunt devices like Squitieri.

3

**THE HERO GRAFT INFRINGES UPON THE '344 PATENT**

The accused product, known as the HeRO Graft, was originally developed by Hemosphere Inc.and later acquired by Merit Medical on May 4, 2016. The HeRO Graft mimics **the precise architecture disclosed in the '344 Patent**:

It includes a synthetic graft connected to an artery;

A connector component that attaches to a venous outflow catheter in an indisposed way;

A venous outflow catheter that terminates directly in the right atrium of the heart.

This device, the HeRO Graft, **performs the identical function as that disclosed in Claim 13 of the '344 Patent—returning blood to the heart while bypassing the veins—and does so in substantially the same way and for the same purpose. Thus, the HeRO Graft infringes upon claim 13 of patent 344.**

Applying the legal principles affirmed in Provisur v. Weber, if the HeRO Graft is entirely dependent on the venous outflow catheter disclosed and claimed in U.S. Patent No. 8,747,344 (specifically Claim 13), then infringement is clear as a matter of law. Just as in Provisur, where the Federal Circuit upheld infringement based on the accused product embodying the patented features, the HeRO Graft's reliance on the structural and functional design of the patented venous outflow component satisfies the elements of direct infringement under 35 U.S.C. § 271(a). Claim 13 of the '344 Patent recites a venous outflow component extending to the right atrium,

4

which is a critical and non-optional feature of the HeRO Graft system as sold and marketed. Therefore, under Federal Circuit precedent, including the doctrine of equivalents where applicable, **the HeRO Graft cannot function without infringing the essential elements of the '344 Patent, making liability for patent infringement both inevitable and irrefutable.**

## THE "CONNECTOR" IS A LEGALLY INSIGNIFICANT ELEMENT

Defendant has repeatedly emphasized the positioning of the connector (i.e., "disposed about" versus "disposed in") as a non-infringement argument. This distinction is legally grossly incorrect for the following reasons:

The Patent Trial and Appeal Board (PTAB), in its Final Written Decision dated July 27, 2012, already addressed this distinction and upheld the "disposed about" language in granting all 20 claims of the parent patent (U.S. Patent No. 8,282,591), and the '344 continuation patent.

Under 35 U.S.C. § 315(e)(2), and as reinforced by the Supreme Court in B&B Hardware, Inc. v. Hargis Indus., Inc., 575 U.S. 138 (2015), this issue was fully litigated and resolved, and **Defendant is estopped from re-litigating it in district court of Utah creating estoppel against disposed about limitation claim 13 of patent344 and creating non infringement defense ,invalidating plaintiffs amend ended complaint and Five infringement claims., grant of judgement on counterclaim1 of non -infringement based on DKT67,72 as order 116 is an error in Law District Judge to renew Denovo ,correct error, vacate order116 and allow all Five infringement claims**

5

Supreme Court Justice Robert H. Jackson, in his exposition of the Doctrine of Equivalents (Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605 (1950)), emphasized that "if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape."

In Graver, Justice Jackson held:

"Courts should not permit the patent to be avoided by merely changing the name of a part, or by making a colorable departure in form or function, while retaining the essential principles."

The connector, as used in both the patented invention and the HeRO Graft, is an interchangeable mechanical component. It serves only to attach the graft to the catheter and is not the core inventive feature of either device. The connector does not materially affect the function, performance, or result of the claimed invention.

In fact, courts have routinely held that interchangeable or functionally equivalent components in medical devices—especially where off-the-shelf parts are used—do not defeat infringement if the substantive function is preserved. See also *Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17 (1997)* (clarifying that infringement under the doctrine of equivalents depends on substantiality, not semantics).

The essence of the '344 Patent is the venous outflow catheter's configuration and its deposition of blood directly into the right atrium, which prevents the vascular

6

# EXHIBIT D

complications plaguing earlier technologies. **The HeRO Graft replicates this core function of patent 344 identically.**

By reproducing the patented feature that defines both the purpose and success of the invention, **the HeRO Graft infringes Claim 13 of the '344 Patent—both literally and under the Doctrine of Equivalents**. Merit Medical's reliance, via their attorney Brent Lorimer, and thereby Judge Romero's reliance on superficial connector placement **is legally irrelevant and precluded by both statutory estoppel and Supreme Court precedent.**

Accordingly, Plaintiff's infringement claims are not only **valid but are legally irrefutable** under established doctrines, binding agency findings, and Supreme Court authority.

Plaintiffs Nazir Khan and Iftikhar Khan, respectfully submit this final memorandum of law in support of his petition to the District Court to conduct a full de novo review of five dispositive orders issued by Magistrate Judge Cecelia M. Romero. These orders—specifically Orders 30, 125, 209, 212, and 213—are not only legally erroneous but were rendered without jurisdiction under 28 U.S.C. § 636(b)(1)(B), as Judge Romero was never granted the consent of the parties to enter dispositive rulings. This memorandum details in comprehensive fashion the grounds for vacatur of these orders and provides a cohesive legal basis grounded in statutory authority, Supreme Court precedent, and the procedural rules of federal litigation.

---

7

## I.    MAGISTRATE JUDGE ROMERO ACTED ULTRA VIRES IN ISSUING DISPOSITIVE ORDERS WITHOUT CONSENT

The dispositive orders entered by Magistrate Judge Romero exceed the statutory limitations imposed by 28 U.S.C. § 636(b)(1)(B). That provision authorizes a magistrate judge to conduct hearings and submit findings and recommendations on dispositive motions, but does not permit issuance of dispositive orders unless the parties have given express consent pursuant to § 636(c). No such consent was provided by either Defendant, as evidenced by the case docket at ECF No. 23, which indicates referral to Judge Romero solely for pretrial purposes.

Despite this jurisdictional constraint, Judge Romero proceeded to issue a series of dispositive rulings, including: (1) a blanket protective order barring Plaintiff from filing any motions (Order 30); (2) a dispositive sanctions order awarding fees under 35 U.S.C. § 285 (Order 125); (3) an additional restriction on filing rights (Order 209); (4) denial of Plaintiff's Rule 11 and § 285 motions (Order 212); and (5) an award of supplemental attorney's fees (Order 213). These actions plainly fall within the category of dispositive orders which, under binding Ninth Circuit and Supreme Court precedent—namely *Williams v. King*, 875 F.3d 500 (9th Cir. 2017) and *Gonzalez v. United States*, 553 U.S. 242 (2008)—require party consent to be valid. In the absence of such consent, these rulings are void ab initio and must be vacated.

---

## II. JUDGE ROMERO DISREGARDED BINDING PTAB FINDINGS AND STATUTORY ESTOPPEL UNDER 35 U.S.C. § 315(e)(2) AND the SSUPREME COURT RULING IN B&B HARDWARE VS. HARGIS

8

Judge Romero also committed clear legal error by disregarding the estoppel effect
of prior administrative adjudications. The U.S. Patent and Trademark Office,
through the Patent Trial and Appeal Board (PTAB), issued a Final Written
Decision on July 27, 2012, which upheld the validity of U.S. Patent No. 8,747,344,
including the critical limitation concerning a "cuff disposed about" the catheter as
set forth in Claim 13. This finding is dispositive under both the doctrine of issue
preclusion and the express language of 35 U.S.C. § 315(e)(2), which bars the
defendant Merit Medical Inc. from re-litigating issues that were raised or
reasonably could have been raised during inter partes review.

Nonetheless, Judge Romero entertained Defendant's estoppel-based arguments that
were duplicative of those already addressed and rejected by the PTAB. By doing
so, the Court contravened the Supreme Court's holding in *B&B Hardware, Inc. v.
Hargis Indus., Inc.*, 575 U.S. 138 (2015), and improperly undermined the finality
of agency adjudication. **The reliance on these improper arguments materially
tainted the subsequent dismissal of Plaintiff's infringement claims and
sanctions orders, necessitating reversal.**

---

## III.   DECLARATORY JUDGMENT DOES NOT CONFER
## PREVAILING PARTY STATUS UNDER *MEDTRONIC*

In *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191 (2014), the
Supreme Court held that the burden of proof in patent cases remains on the patent
holder, even in declaratory judgment actions initiated by alleged infringers.
Furthermore, the Court clarified that such declaratory rulings are procedural in
nature and do not establish prevailing party status for the purpose of awarding
attorney's fees under§ 285.

9

In this case, Merit Medical obtained a declaratory judgment of non-infringement
through Dkt. 116, but there was no substantive adjudication on the merits of
Plaintiff's infringement claims.    This was a misapplication of *Medtronic* decision,
**rendering any future fee awards legally unsound and requiring their
rescission.** Hon. Judge Nielson should review Magistrate Judge order 125 de novo
and vacate it as it is legally invalid.

---

## IV. DEFENDANT'S CONDUCT CONSTITUTES EXCEPTIONAL CASE BEHAVIOR UNDER *OCTANE FITNESS*

In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014), the
Supreme Court held that an "exceptional" case under 35 U.S.C. § 285 is one that
"stands out from others with respect to the substantive strength of a party's
litigating position... or the unreasonable manner in which the case was litigated."
The Court emphasized a flexible, equitable approach guided by the totality of the
circumstances. As set forth below, each of the following eight subsections
demonstrates that Defendant Merit Medical Systems, Inc.'s ("Merit") conduct
qualifies as exceptional and warrants sanctions under § 285.

### 1. Merit Had No Patent Rights and Lacked Constitutional Standing

Merit initiated and defended litigation while lacking any ownership or licensing
rights to the accused product, the HeRO Graft. It falsely asserted that it possessed a
patent related to the device but ultimately produced only irrelevant references. In
*Raniere v. Microsoft Corp.*, 887 F.3d 1298 (Fed. Cir. 2018), the court held that

10

parties without ownership or exclusive rights lack constitutional standing. Thus,
from the inception of this litigation, Merit's position was substantively baseless
and constitutionally defective, rendering its defense objectively unreasonable.

## 2. Merit Fabricated Grounds for Litigation Misconduct by Exploiting Procedural Orders

Plaintiff was directed by the District Court in Dkt. 59 to file a renewed summary
judgment motion. However, Plaintiff was simultaneously restrained by Dkt. 30—
an improper blanket order issued by Magistrate Judge Romero—which barred
Plaintiff from filing any motions. Plaintiff's efforts to seek leave to lift that
restriction (Dkts. 60–66) were later weaponized by Merit as purported violations of
court orders. These filings were lawful attempts to comply with this Court's
directive, not misconduct. Merit's effort to reframe them as sanctionable behavior
was deceitful and plainly unreasonable under *Octane Fitness*.

## 3. Merit Misled the Court by Claiming Prevailing Party Status

Merit sought attorney's fees on the basis that it was a prevailing party following
the Court's grant of declaratory judgment of non-infringement. However,
declaratory judgments are procedural in nature and do not confer substantive
prevailing party status. See *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571
U.S. 191 (2014). Merit's assertion that it prevailed—despite the procedural nature
of its relief—was misleading and lacked legal foundation. Such misrepresentation
supports a finding of exceptional conduct under § 285.

11

### 4. Merit Concealed Adverse Rulings in Prior Related Litigation

In a prior case before the Northern District of Illinois, Merit unsuccessfully sought
sanctions against Plaintiff under § 285, and the district court explicitly held that
Plaintiff's conduct was not exceptional. That ruling was affirmed by the Federal
Circuit. Merit deliberately failed to disclose this binding and directly adverse
precedent to Magistrate Judge Romero when seeking sanctions under § 285 in the
instant matter. This omission was material, unethical, and calculated to mislead the
Court. Such conduct independently supports an award of fees against Merit.

### 5. Merit Relitigated Claim Construction Issues Decided by the PTAB

The Patent Trial and Appeal Board (PTAB) previously ruled on the "cuff disposed
about" limitation in the '344 Patent, and its ruling was affirmed by the Federal
Circuit. Nevertheless, Merit relitigated this exact issue in the Utah district court,
resulting in dismissal of Plaintiff's amended complaint based on estoppel theories
that conflicted with controlling precedent. Under *B&B Hardware, Inc. v. Hargis
Indus., Inc.,* 575 U.S. 138 (2015) and 35 U.S.C. § 315(e)(2), Merit was estopped
from rearguing these matters. Its conduct in doing so is a textbook case of
unreasonable litigation under *Octane Fitness.*

### 6. Merit Willfully Infringed Plaintiff's Patent Despite Knowledge of Its
### Validity

12

Merit acquired the HeRO Graft in 2016 for $18.2 million, with full knowledge of
Plaintiff's '344 Patent. The accused device directly copies the patented venous
outflow catheter architecture, which routes blood into the right atrium—an
innovation never disclosed in Merit's prior art. Merit has continued to manufacture
and sell this device despite its lack of patent rights. Willful infringement and
commercial exploitation of a known patent supports a finding of exceptionality and
justifies a substantial award of enhanced damages under *Imperium IP Holdings
(Cayman), Ltd. v. Samsung Elecs. Co.*, 2018 WL 1602460 (E.D. Tex. Apr. 3,
2018).

### 7. Merit Made False Statements About Its Patent Position in Pleadings

In responsive pleadings, Merit falsely claimed that it owned a patent on the HeRO
Graft. It later admitted that no such patent exists. This false statement was made
knowingly and with the intent to mislead the Court and to obstruct Plaintiff's
assertion of his exclusive rights under the '344 Patent. Misrepresentation of
standing and patent ownership in federal court filings constitutes litigation
misconduct and supports a finding of exceptionality under § 285.

### 8. Merit's Litigation Strategy Undermines the Incentive Structure of the U.S. Patent System

The Constitution protects inventors by granting them the exclusive right to their
discoveries under Article I, Section 8, Clause 8. Sanctioning Plaintiff—a bona fide
inventor and the lawful patentee—while enabling a non-patentee to copy,

manufacture, and profit from unpatented infringing devices without legal
consequence undermines the core public policy of the Patent Act. If left
uncorrected, such outcomes will deter future innovation and erode the credibility
of judicial enforcement in intellectual property disputes. Under *Octane Fitness*, the
Court must consider the broader implications of such abusive litigation on the
integrity of the patent system.

Under the totality of the circumstances, Merit's conduct is not only objectively
baseless but was executed in an unreasonable and deceptive manner. Each of the
eight grounds above independently justifies a finding of exceptionality under 35
U.S.C. § 285. Plaintiff respectfully requests that this Court vacate Order 125, deny
Defendant's request for fees, and instead impose sanctions against Defendant Merit
Medical for its exceptional misconduct.

---

## VI. PLAINTIFF COMPLIED WITH COURT ORDERS AND WAS PENALIZED UNJUSTLY

Plaintiff consistently attempted to comply with this Court's procedural directives,
including Judge Nielson's order in Dkt. 59. For example, Plaintiff filed motions in
good faith, namely Dkts 60, 62, 63, 64, 65, and 66, which attempted to remove the
restrictions imposed by the order in Dkt.30 by Judge Romero.  This order
unilaterally only restricted the plaintiff from new motions.  These filings were
procedurally sound but were never docketed or considered.

14

Subsequently, Plaintiff was sanctioned for engaging in conduct that complied with Court order of Judge Nielson. Order 30's sweeping prohibition on Plaintiff's ability to file motions—and the punitive treatment of Plaintiff's good faith attempts to comply with Court directives—violated Plaintiff's procedural due process rights under the Fifth and Fourteenth Amendments. This constitutional infirmity renders the order legally invalid and necessitates vacatur. Furthermore, the six motions Plaintiff submitted in an effort to seek relief from this restriction (Dkts. 60, 62, 63, 64, 65, and 66) were improperly characterized by Judge Romero as litigation misconduct. These filings, made in direct response to the Court's own instruction to pursue renewed summary judgment, cannot lawfully serve as the basis for sanctions under 35 U.S.C. § 285. Their use in support of such sanctions reflects a clear error of law and constitutes a denial of fair process.

## VI. ATTORNEYS' FEE AWARDS VIOLATE RULE 54 TIMING REQUIREMENTS

Rule 54(d)(2)(B)(i) requires that motions for attorney's fees be filed within 14 days of final judgment. Defendant violated this rule repeatedly:

1. First Submission: Claimed fees from 6/1/2021 to 9/30/2022 totaling $326,385, was filed before any final judgment existed; judgment order 116 was issued on 7/31/2023. This fee judgment is therefore invalid.

2. Second Submission: Claimed fees from 10/1/2022 to 7/31/2023 totaling $44,645.45, despite Judge Romero's denial of leave to supplement in Order 125; in judgment order filed on 9/20/2023, Judge Romero stated that under Dkt. 117 the Defendant's Motion for supplemental fee is denied. Therefore, Judge Nielson should deny this fee.

15

3. **Third Submission:** Claimed $36,800.45 from 8/1/2024 to 3/3/2025,
   predicated solely on a non-substantive declaratory judgment. Judge Romero
   cannot grant leave to file this third submission 1 year and 7months after
   Dkt.116 was filed. The defendant attorney filed this motion as Dkt.214 on
   3/5/2025 and this extremely untimely.

Collectively, the unauthorized total of $ 487,253.20 in DKT 214 must be struck
from the record. The defendant is not a prevailing party and the awards **are
procedurally and substantively defective.**

---

## VII. DEFENDANT MERIT MEDICAL SYSTEMS AND ITS ATTORNEYS SHOULD BE SANCTIONED UNDER RULE 11 FOR VIOLATING THEIR DUTY OF CANDOR AND ABUSING THE JUDICIAL PROCESS

Rule 11 of the Federal Rules of Civil Procedure exists to prevent precisely the type
of abusive litigation conduct exhibited by Defendant Merit Medical Systems, Inc.
("Merit") and its counsel throughout the pendency of this matter. Rule 11(b)
requires that all representations to the Court be made in good faith, supported by
fact and law, and not presented for any improper purpose such as to harass, cause
unnecessary delay, or needlessly increase litigation costs. Violations of these
principles mandate sanctions under Rule 11(c).

The record in this case, as outlined below and previously briefed in Dkts. 157, 195,
196, and 219, overwhelmingly supports the imposition of Rule 11 sanctions against
both Merit and its attorneys—specifically Brent Lorimer and Todd Vuksinick—for

16

conduct that is objectively unreasonable, factually baseless, and legally frivolous.
Plaintiff has fully complied with the procedural requirements of Rule 11(c)(2),
including proper notice via certified letter dated January 12, 2022, and only filed
the Rule 11 motion (Dkt. 196) after Merit refused to withdraw its meritless claims
within the 21-day safe harbor period.

## A. Merit Made Knowingly False Statements Regarding Patent Ownership and Standing

At the outset of this litigation, Merit falsely claimed in responsive pleadings that it
held a patent covering the accused HeRO Graft. That representation was
knowingly false. As subsequently admitted, Merit holds no patent on the HeRO
Graft and, therefore, lacks both statutory and constitutional standing to defend
against the infringement claims asserted under U.S. Patent No. 8,747,344 ("the
'344 Patent"). See *Raniere v. Microsoft Corp.*, 887 F.3d 1298 (Fed. Cir. 2018)
(holding that a party must have legal title or exclusive license to assert standing).

Merit's misrepresentation of standing—central to its defense strategy—was not
merely a factual inaccuracy; it was a deliberate falsehood intended to mislead the
Court and gain procedural and tactical advantage. Such misstatements are
sanctionable under Rule 11(b)(3) and (b)(1), as they are not supported by fact and
were presented to harass and delay.

## B. Merit Misrepresented the Procedural Status of the Case to Justify Sanctions Against Plaintiff

17

Merit falsely claimed to be the prevailing party in this litigation and used that
claim as a basis to seek attorney's fees and sanctions under 35 U.S.C. § 285.
However, as the Supreme Court made clear in *Medtronic, Inc. v. Mirowski Family
Ventures, LLC*, 571 U.S. 191 (2014), a declaratory judgment is procedural and
does not confer prevailing party status unless it results in a substantive alteration of
the legal relationship between the parties. No such substantive relief has been
granted in Merit's favor. Thus, its assertion of prevailing party status is legally
unsupportable and was presented for an improper purpose—namely, to chill
Plaintiff's exercise of constitutional rights.

## C. Merit Relitigated Issues Barred by Statute and Supreme Court Precedent

Merit relitigated the "disposed about" limitation of Claim 13 of the '344 Patent—
an issue already resolved by the Patent Trial and Appeal Board (PTAB) in a Final
Written Decision dated July 27, 2012, and affirmed by the Federal Circuit. Under
35 U.S.C. § 315(e)(2) and *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S.
138 (2015), such issues are barred from relitigation in district court proceedings.

Despite the statutory estoppel, Merit knowingly advanced arguments based on
prosecution history estoppel—repackaging an already rejected argument and
misleading Magistrate Judge Romero into dismissing Plaintiff's infringement
claims. This tactic reflects bad faith, violates Rule 11(b)(2), and constitutes abuse
of judicial resources.

## D. Merit Omitted Binding and Adverse Case Law in Its § 285 Motion

18

In its motion for sanctions under 35 U.S.C. § 285, Merit deliberately failed to
disclose binding adverse authority from the Northern District of Illinois (Case No.
1:18-cv-05368), where Merit had previously sought § 285 sanctions against
Plaintiff in an earlier infringement suit involving the same patent. In that case,
Judge Virginia Kendall explicitly found that Plaintiff's conduct was not
exceptional under *Octane Fitness*, and the Federal Circuit affirmed that ruling.

Merit's failure to disclose this directly controlling precedent is a violation of its
duty of candor to the Court and a basis for sanctions under Rule 11 (b)(2) and
(b)(3). This omission was not accidental—it was a strategic concealment designed
to mislead the Court and manipulate the outcome.

### E. Merit Weaponized Procedural Orders to Manufacture "Litigation Misconduct"

Judge Romero issued a broadly restrictive order (Order 30) that prevented Plaintiff
from filing any motions. When Plaintiff attempted, in good faith, to seek relief
from this restriction—specifically in response to Dkt. 59 directing Plaintiff to file a
renewed summary judgment motion—Merit falsely characterized those filings
(Dkts. 60–66) as violations of court orders and as misconduct warranting sanctions.

This was a deliberate distortion of procedural history and a calculated effort to shift
blame for Plaintiff's attempts to comply with inconsistent judicial instructions.
Rule 11 does not permit the use of procedural traps to fabricate claims of
misconduct. Such tactics undermine the fairness of the litigation process and
justify sanctions. Defendant Merit Medical and Judge Romero both stated
plaintiffs Plaintiff case as Frivolous and Litigation Misconduct has no no Factual

19

and legal support  District Judge to review Denovo decision order  for clear error in
contravention of paten tact 35USC  §285 and supreme court ruling in  Octane
fitnee.  And vacate Judgement Order125

## F. Plaintiff's Rule 11 Motion Was Properly Noticed and Procedurally Compliant

Merit argued that Plaintiff's Rule 11 motion (Dkt. 196) was defective because it
was not served 21 days before filing. This is demonstrably false. On January 12,
2022, Plaintiff sent a certified letter, with return receipt, to Defendant's counsel,
specifically invoking the 21-day safe harbor provision under Rule 11(c)(2) and
requesting withdrawal of frivolous claims.

Merit failed to respond or withdraw the challenged claims. Plaintiff waited the
requisite period before filing the motion. 196 on 10/23/2o24, Therefore, the motion
is fully compliant with the procedural requirements of Rule 11 and must be
adjudicated on its merits. Allow relief requested in DKT196

## VIII. WILLFUL INFRINGEMENT OF A VALID, ADJUDICATED PATENT

The HeRO Graft product utilizes a venous outflow catheter terminating in the right
atrium, precisely the limitation in Claim 13 of the '344 Patent. Unlike prior art
which drained into the vein, this innovation dramatically reduces failure rates.
Defendant acquired the product through CryoLife Inc. and Hemosphere Inc., and
has continuously manufactured and profited from the infringing design since at

20

least 2016. Under 35 U.S.C. § 284, Plaintiff is entitled to triple damages for this willful infringement. The Court should please allow claim 4 of patent 344 and grant relief of $2,000,000 to be tripled to $6,000,000 regarding this willful infringement.

Merits   abusive Conduct   of taking of plaintiffs patented invention and sanction plaintiff under §285  is an abuse of Judicial process  Merits actions are deceitful. Court should not allow to reward an unpatented device. Merits actions are in violation of Constitutional and Statutory Law, . .Merit  can be deterred from  future abusive actions ,by inflicting heavy monitory damages on  merit Medical .and take Disciplinary action on Three Merits attorneys for intentional misconduct, This court should allow Relief on DKT193 ,for Constitutional violation  of intellectual property rights on patent344 under Art 1 Clause8, sec 8 of Constitution  and Compensate plaintiff for taking  of patent344 for Merits Benefit  under 5th amendment of  constitution, and allow Rule11 sanctions against Merit DKT196 that will have a deterrent effect on Merit not to take of others patented invention in future

---

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Honorable Court:

1. VACATE Orders 30, 125,209,212, and 213;
2. DECLARE Orders 125 and 212 void under 28 U.S.C. § 636(b)(1)(B), and § 636(b)(c).
3. STRIKE all rulings premised on estopped arguments barred by § 315(e)(2);
4. REVERSE attorney fee awards as unauthorized and procedurally defective;

5. GRANT Plaintiff's motions under Rule 11 and § 285 (ECF Nos. 157, 195,
   196) and award $1.5 million to be divided equally between Merit Medical
   Inc, Brent Lormer, and Thomas Vuksinick;

6. ENJOIN Defendant from further infringement by issuing a permanent
   injunction on Merit Medical to not sell the HeRO graft and impose a 15%
   royalty on all HeRO grafts sold from 5/4/2016–present day, 5/12/2025;

7. AWARD $5 million in compensatory damages under the takeaway clause
   listed in the 5th amendment of the Constitution.

8. AWARD $10 million under Dkt. 193, for violation of the intellectual
   property rights protected under under Article I, Clause 8, Section 8.

9. SANCTION Defendant and its counsel for litigation misconduct;

10. ORDER that this submission be reviewed directly by Judge Nielson, not
    referred back to Judge Romero;

11. GRANT such further relief as is just and proper.

Respectfully submitted,

/s/ Nazir Khan

/s/ Iftikhar Khan

150 Glenmora Drive

Burr Ridge, IL 60527

Phone: (312) 590-0889

Email: nazirkhanmd2003@yahoo.com

Dated: May 14th 2025

22

# MEMORANDUM OF LAW IN SUPPORT OF DE NOVO REVIEW

**ADDRESSED TO:**

**Hon. Howard C. Nielson Jr.**
United States District Judge
U.S. District Court for the District of Utah
351 South West Temple, Room 3.400
Salt Lake City, UT 84101

**Hon. Chief Judge Robert J. Shelby**
Chief Judge, U.S. District Court for the District of Utah
351 South West Temple, Room 3.100
Salt Lake City, UT 84101

**Re: Necessity of De Novo Review in Protection of Constitutional and Statutory Rights of Plaintiffs**

## I. INTRODUCTION

This memorandum outlines compelling, legally grounded, and **constitutionally protected** reasons for the necessity of **de novo review** of all dispositive orders and findings issued by Magistrate Judge Cecilia M. Romero. This requirement is mandated under **28 U.S.C. § 636(b)(1)(C), Federal Rule of Civil Procedure 72(b)(3)**, and binding precedent from the **Supreme Court** and the **Tenth Circuit**. These arguments for de novo review are irrefutable. Our previous Memorandum addressed to a District Court Judge and Chief Judge legally requesting de novo review, cannot be lodged by a Magistrate Judge. This is gross judicial obstruction.

## II. LEGAL AND CONSTITUTIONAL BASIS FOR DE NOVO REVIEW

1

## 1. Statutory Mandate: 28 U.S.C. § 636(b)(1)(C)

- This statute requires the district judge to "make a de novo determination" of any portion of the magistrate judge's report and recommendation that has been properly objected to.
- The use of "shall" indicates a **mandatory duty** on the part of the Article III judge.
- A failure to conduct de novo review where objections are made violates the statutory rights of the objecting party.

## 2. Federal Rule of Civil Procedure 72(b)(3)

- Rule 72(b)(3) mandates that the district court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."
- The court **may only adopt, reject, or modify** the magistrate's recommendations **after** fulfilling this obligation.

## 3. Constitutional Due Process under the Fifth Amendment

- Plaintiffs have a right to a **neutral decision-maker** and **meaningful opportunity to be heard**, as articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976).
- Denial of de novo review when due is a **violation of due process**, especially when the case concerns deprivation of **property rights** (i.e., patent ownership and remedies).

---

# III. GROUNDS COMPELLING DE NOVO REVIEW IN THIS CASE

## 1. Dispositive Nature of the Rulings

- The magistrate judge issued rulings that are **dispositive**, including sanctions under **35 U.S.C. § 285**, findings of bad faith, and recommendations affecting case outcome.
- Such rulings **must** be reviewed de novo by an Article III judge. See *Gonzalez v. United States*, 553 U.S. 242 (2008).

## 2. Jurisdictional Overreach by Magistrate Judge Romero

2

- Under **28 U.S.C. § 636(c), written consent of both parties** is required for a magistrate judge to enter dispositive rulings or judgment.
- Plaintiffs never provided such consent, making these orders void unless reviewed and adopted de novo by a district judge.

### 3. Clear and Timely Objections Were Filed

- Plaintiffs filed detailed and timely objections to Judge Romero's rulings.
- Under *United States v. One Parcel of Real Property*, 73 F.3d 1057 (10th Cir. 1996), this compels the district court to perform de novo review.

### 4. Substantial Patent and Constitutional Rights Are at Stake

- The case involves enforcement of a federally granted patent, a constitutionally protected property right under Article I, § 8, cl. 8.
- The outcome determines whether a $6 billion company may infringe on a U.S. patent without consequence, implicating **fundamental due process** rights.

### 5. Evidence of Bias and Improper Fact-Finding

- Judge Romero issued sanctions and factual findings without adhering to controlling Supreme Court precedent (*Octane Fitness v. ICON Health*, 572 U.S. 545 (2014)).
- De novo review is required to prevent miscarriage of justice arising from improper application of legal standards and potential judicial bias.

### 6. Binding Precedent Demands De Novo Review

- **Supreme Court:** *Thomas v. Arn*, 474 U.S. 140 (1985)—Courts must review de novo any part of a magistrate's report objected to.
- **Tenth Circuit:** *Summers v. Utah*, 927 F.2d 1165 (10th Cir. 1991)—De novo review is mandatory when objections are timely and specific.

---

# IV. PUBLIC CONFIDENCE AND JUDICIAL ACCOUNTABILITY

### 1. Preventing Judicial Overreach

3

- Article III oversight ensures transparency, fairness, and adherence to the Constitution.
- Allowing a magistrate to resolve dispositive matters without review invites unchecked power and undermines the federal judiciary.

**2. Remedying Systemic Abuse or Overreach**

- In this case, there is significant concern about procedural irregularities and bias.
- Only independent, de novo review can ensure the integrity of the judicial process and protect against abuse of discretion.

---

# V. CONCLUSION

De novo review is **not optional** when objections are properly filed to dispositive rulings of a magistrate judge. It is a **constitutional safeguard**, a **statutory mandate**, and a **procedural necessity** to preserve judicial integrity and protect the rights of litigants. Each dispositive order issued by Magistrate Judge Romero must be reviewed independently, thoroughly, and fairly by this Court.

The Constitution, Congress, and Supreme Court precedent demand nothing less.


Respectfully,


/s/ Nazir Khan

/s/ Iftikhar Khan

150 Glenmora Dr

Burr Ridge, IL 60527

4

# EXHIBIT A

Exhibit A

From Merit Medical Systems Inc. own website demonstrating the position of the venous outflow catheter, which of grey color, positioned in the right atrium of the heart.



 **YouTube**

**Exhibit B**

hero graft jeffrey lawson      ✕   🔍      🎤      ⊞+

Home

Shorts

Subscriptions

Your channel

History

Playlists

Your videos

Watch later

Liked videos



2:13

## HeRO® Graft- Procedural Overview
1.7K views • 8 years ago

 MeritMedical

Jeffrey H. Lawson, MD, PhD, gives an overview of the HeRO Graft implantation procedure

 5 chapters  arterial inflow graft | titanium connector | venous outflow compo



2:00

## HeRO® Graft - Reliable and Replaceable Video
547 views • 8 years ago

 MeritMedical

Jeffrey H. Lawson, MD, PhD, discusses clinical scenarios where the HeRO Graft serves as replaceable access ...

EXHIBIT C. The tip of the venous outflow catheter [14,15] in Fig.2 of patent
344 is clearly in the right atrium of the heart circa 3/29/2004.



## FIG 2

# EXHIBIT D

## Connectors For Hemodialysis Shunts



# EXHIBIT D

# EXHIBITC

# EXHIBIT B

Retail



UNITED STATES
POSTAL SERVICE

RDC 99



20439

U.S.
FCM
CHI
JUL

$

S23

FROM:

I. KHAN

747 W. WRIGHTWOOD Ave, UNIT C

CHICAGO IL 60614.

TO:

CLERK OF U.S. COURT OF APPEALS

FOR THE FEDERAL CIRCUIT

717 MADISON PLACE, NW

WASHINGTON, DC 20439